CASTENHOLZ, Respondent, vs. HELLER, Appellant.

*January 13—April 12, 1892.*

*Vendor and purchaser of land: Fraudulent representations as to bound-
   aries: When purchaser chargeable with knowledge from plat:
   Pleading: Instructions to jury: Evidence.*

1. In an action for fraudulent representations as to the boundaries of
   land, by means of which plaintiff was induced to purchase, an al-
   legation that he purchased certain lots is not inconsistent with the
   statement that he bought also a part of other lots represented by
   defendant to be within and a part of the lots first mentioned.

2. In such an action, although the plaintiff, before he purchased, had
   in his possession an abstract of title with a plat of the lots pur-
   chased, and might have learned therefrom the true boundaries of
   such lots, yet if the defendant, by his false representations, diverted
   or prevented him from so learning such boundaries, there may be
   a recovery.

3. An instruction to the jury, in such a case, that "the plaintiff is pre-
   sumed to have seen the map contained in the abstract furnished
   him, and to have known the size of the lots as shown by such
   map," is *held* sufficiently favorable to the defendant.

4. The plaintiff was asked by his counsel: "Did you take into consid-
   eration the size of the property as shown by the fence [represented
   by defendant to be the boundary]?" "Did you believe what de-
   fendant said as to the property being inclosed by the fence?" etc.
   *Held,* that the allowance of these leading questions was not error.

5. The allowance of a question to defendant as to what his business
   was before he went into the real-estate business, was not error.
   The question was either immaterial or went to the credibility of
   the witness.

6. Evidence as to the price for which plaintiff offered to sell the prop-
   erty more than a year after his purchase, was properly excluded.

APPEAL from the Superior Court of *Milwaukee* County.
The complaint alleges that until January 29, 1889, the
defendant was the owner of lots 13 and 14, in block 16, in
Glidden & Lockwood's addition, in the Eighteenth ward of
the city of Milwaukee; that on that day the plaintiff pur-
chased of the defendant the said property for the agreed

price of $2,600, which was duly paid, and the defendant duly conveyed the same to plaintiff; that prior to the purchase, and about January 22, 1889, the plaintiff, being ignorant and unaware of the extent and boundary of the property, went with defendant to view it, intending to buy it if suitable for his purposes; that at that time said lots 13 and 14 and a certain other parcel of real estate adjoining said lots on the east were inclosed by a fence surrounding the same, and constituted to all appearances one tract or parcel of land; that the defendant, for the purpose of inducing the plaintiff to purchase said lots 13 and 14, falsely represented that all the real estate so shown to the plaintiff and inclosed within said fence was said lots 13 and 14 and owned by the defendant, and that said fence was the true boundary of said lots 13 and 14; that the plaintiff, relying upon said representations and believing them to be true, purchased said property as aforesaid; that the said piece of land adjoining said lots 13 and 14 and inclosed with them by said fence was and would be of great value to the plaintiff, and said lots as conveyed to him by the plaintiff are of small value and worth much less than $2,600; and that by reason of the premises the plaintiff has suffered damage in the sum of $1,500, for which sum judgment is demanded.

The answer admits that the defendant was the owner of said lots 13 and 14, and that he sold them to the plaintiff, and denies all the other allegations·of the complaint.

The testimony and the special verdict of the jury are sufficiently stated in the opinion. From a judgment in favor of the plaintiff for $425 damages, and costs, the defendant appeals.

For the appellant there were briefs by *Williams, Friend & Bright*, and oral argument by *O. T. Williams.*

For the respondent there was a brief by *Somers, Somers & Dorr*, and oral argument by *Thos. H. Dorr.*

The following opinion was filed February 2, 1892:

ORTON, J.   The plaintiff purchased of the defendant lots
13 and 14, in block 16, in Glidden & Lockwood's addition,
in the Eighteenth ward of the city of Milwaukee, for $2,600.
The testimony on behalf of the plaintiff tends to show that
the plaintiff, being ignorant of the extent and boundary of
said lots, a few days previous to such purchase went with
the defendant to view said property, and when on the
ground the defendant represented that a certain fence,
which inclosed said lots together with a part of the adjoin-
ing lots 6 and 7 on the east, was the true boundary of said
lots 13 and 14, and that he owned the whole thereof; and
the plaintiff at the time made a diagram of the tract em-
braced within said fence, on a card, in the presence of the
defendant, and marked the dimensions thereof on said card,
in figures given him by the defendant at the time, as 84
feet on the east line, 148 feet on the south line, and 127 feet
on the north side; and the plaintiff relied on such representa-
tions as being true, and as an inducement to him to make
such purchase.   The lots 13 and 14 make a triangular tract
of land, with the east line due north and south, and the
south line east and west, with a right angle at the southeast
corner, the north line 122½ feet, the east line 90 feet, and
the south line 101½ feet.   It appears that the additional
tract, as a part of lots 6 and 7 on the east, inclosed with
lots 13 and 14, was not owned by the defendant.   The de-
fendant, as a witness, denied that he made any such repre-
sentation, and denied that he knew the plaintiff made any
such diagram on a card, and denied that he gave the plaint-
iff any figures as dimensions of said tract.   The testimony
on behalf of the defendant tended to prove that afterwards,
and before the purchase, he, the defendant, showed the
plaintiff the city map and the Dupre map, and pointed
out to him thereon said lots 13 and 14, and showed him

several letters, addressed to others, with a plat, diagram, or sketch of lots 13 and 14 thereon, and gave the plaintiff an abstract of title of said lots, containing a plat thereof, and pointed out the situation of said lots thereon, and that the plaintiff had such abstract at the time of said purchase. The plaintiff, as a witness, denied that he saw any of said maps, plats, or letters, and denied that the defendant ever called his attention to the situation of said lots thereon, and admitted only that the defendant gave him such abstract, but testified that he did not pay any attention to the situation of said lots on the plat thereon, but supposed that said representation of said fence as the boundaries thereof was true, and relied solely on the same in making such purchase. It appears that the figures on the city and Dupre maps did not agree as to the dimensions of said lots. This is a sufficient statement of the evidence in the case on the question of the false and fraudulent representations of the defendant charged in the complaint as the foundation of this action.

The special verdict of the jury is, in substance, as follows: (1) that the defendant made the representations; (2) that they were material and untrue and that the plaintiff was misled thereby; (3) that the plaintiff relied upon said representations as to the boundary in making such purchase, and that they were the inducement to the plaintiff in making such purchase; (4) that the defendant made said representations falsely and fraudulently; (5) that the plaintiff, prior to the purchase on the 5th day of February, 1889, did not have the present means in his power or possession of ascertaining the true boundary; (6) that the plaintiff used due and proper caution and diligence in endeavoring to ascertain the true boundary; (7) that on the day of the purchase the value of that part of lots 6 and 7 inclosed by the fence with lots 13 and 14, when taken in connection with lots 13 and 14, was $425; (8) that the value of that

part of lots 6 and 7 that was inclosed by a fence with lots 13 and 14, when taken in connection with them at the present time, is $500; (9) that they find for the plaintiff.

The contentions of the learned counsel of the appellant will be disposed of in their order.

1. The demurrer *ore tenus* was properly overruled. The allegation in the complaint that the plaintiff purchased lots 13 and 14 is not inconsistent with the statement that he bought also a part of lots 6 and 7, represented by the defendant as being within lots 13 and 14 and a part thereof. He bought, and supposed he was buying, all the land embraced within and inclosed by the fence as lots 13 and 14. The objection is technical and unfair. The law appropriate to this point, as stated by the learned counsel of the respondent, is correct and elementary, that, "where a vendor undertakes to point out to the purchaser the boundaries of the land, he is under obligation to point them out correctly, and has no right to make a mistake, except upon the penalty of responding in damages." *Bird v. Kleiner*, 41 Wis. 134; *Davis v. Nuzum*, 72 Wis. 439.

2. The verdict appears to be supported by the evidence. The jury must have found that the testimony of the plaintiff was true, and on the strength of it they found that the plaintiff did not have in his power or possession the means of ascertaining the true boundary of the lots. A very strong circumstance, stated by the plaintiff to corroborate his testimony that the defendant represented the fence to be the true boundary, is that the plaintiff at the time considered the size and extent of the ground so inclosed, with a view of turning the buildings thereon around and making an addition thereto, and that the whole space included in the parts of lots 6 and 7 so inclosed with lots 13 and 14 was necessary for such purpose, and that they would extend nearly to the corner thereof. If this is true, and it is presumed the jury believed it to be true, the plaintiff

must have implicitly believed that the fence was the true boundary, and that he had use for the whole of the space inclosed by the fence, and would not have made the purchase if he could not utilize the buildings in that way in carrying out the objects of the purchase. In every respect this was a case for a jury, and the verdict should not be disturbed if there was the positive testimony of the plaintiff to support it. *Flosbach v. Brown*, 45 Wis. 427. The testimony on the main facts is very conflicting, each party contradicting the other. The jury are the exclusive judges of the credibility of witnesses and the weight of their testimony. *Bowe v. Rogers*, 50 Wis. 598; *Brusberg v. M., L. S. & W. R. Co.* 55 Wis. 106. It cannot be said that there was no testimony to a particular fact, if one party has sworn positively to its existence. *Flosbach v. Brown, supra.* The jury must determine which of two witnesses is the more credible, where their testimony is conflicting. *Kuehn v. Wilson*, 13 Wis. 104. The question of fraud, resting on contradictory evidence and the credibility of the witnesses, must be determined by the jury alone. *Hall v. Scott*, 59 Wis. 236; *Padden v. Tronson*, 45 Wis. 126.

It seems to be admitted that the plaintiff had in his possession an abstract with the plat of these lots on it. If he had observed it, he would have found that the southeast corner was a right angle, and that the east line was due north and south, while the tract inclosed by the fence was an acute angle at the southeast corner; and the east line was northwest and southeast to some extent, and not square with the map. It may be that the plaintiff did not observe that the tract inclosed by the fence was not a right angle at the southeast corner, or that the east line was not exactly north and south. It might have been sufficient for him to know that there was room enough for the readjustment of the buildings as he wished, and he did not observe the form of the tract inclosed. He was only concerned with the

size, spaces, and dimensions of the tract.  He may not have observed the form of the lots on the plat, or looked at the plat for the purpose of ascertaining their size, dimensions, or boundary, having been satisfied in such respects by being on the ground and having the boundary so pointed out to him by the defendant.  This satisfied him without further inquiry.  The defendant used this device to satisfy the plaintiff that the lots were large enough for the use he intended to make of them, and induce him to purchase, and at the same time this device had the effect to divert him from ascertaining the true boundary by. the map, and closed his further observation of it.  If the plaintiff is to be presumed to have known and observed the form and boundary of the lots from having in his possession a map or plat of them, the defendant must not have used any device or trick which would have naturally prevented him from using his full powers of observation, or taking notice of the true boundary on the plat.  The defendant, by being guilty of misrepresenting the size, dimensions, and boundaries of the lots by this device of a fence around them, which prevented the plaintiff from making further inquiry thereof, is not entitled to the benefit of a presumption of the fact that he did observe, or ought to have observed, the true boundary by the use of the plat in his possession.  He prevented such observation, and he cannot now hold him responsible for not observing.  The plaintiff testified that he never observed the size or boundary of the lots on any plat or map.  The jury found that the plaintiff used due and proper caution and diligence in endeavoring to ascertain the true boundary.  We think the finding is warranted by the facts.  That a party shall be presumed to know what he has the present means in his possession of knowing, is a correct principle of law.  But that the other party must do nothing to prevent such actual knowledge, by any sign, device, or trick, is a co-ordinate principle, and belongs with it.

Castenholz vs. Heller.

*Parker v. Moulton,* 114 Mass. 99. We do not think this court would be justified in reversing this judgment on the merits.

3. The court allowed the plaintiff's counsel to ask him, as a witness, the following questions: "Did you take into consideration the size of the property as shown by the fence?" "Did you believe what *Heller* said as to the property being inclosed by the fence?" "Was there anything else that induced you,— was the size of the lot taken into consideration by you?" It is difficult to see how that evidence could have been elicited by indirect questions. The questions call for mental operations, like "Did you intend?" "Were you angry?" "Did you believe?" etc.,— which could hardly have been arrived at without a form of question that might, to some extent, suggest the answer. The allowance of these leading questions would not be error, unless it appeared to have been an abuse of discretion, and it does not so appear. *Coggswell v. Davis,* 65 Wis. 191; *McPherson v. Rockwell,* 37 Wis. 159; *Barton v. Kane,* 17 Wis. 37. The same facts might have been reasonably inferred from the testimony of the witness in giving an account of what took place on the lots when the representation about the fence was made.

4. The defendant was asked, as a witness, what his business was before he went into the real-estate business. This was either immaterial or went to the credibility of the witness. The jury cannot know too much of a witness to properly weigh his testimony. It was not error.

5. The court refused to allow the witness West to testify at what price the plaintiff offered to sell the property. This was on the question of its value. It was over a year after the sale. This raised a new issue to be tried, involving many other questions, such as the change in value, the reason of the offer, etc., and clearly improper.

6. The court instructed the jury that "the plaintiff is

*presumed* to have seen the map contained in the abstract furnished him, and to have known the size of the lots as shown by such map." The learned counsel of the appellant excepted to this, for the reason that the court should have told the jury that the plaintiff *did see* the map, and *knew* from it the size of the lots, and that there was no presumption about it. This part of the charge of the court was sufficiently, if not too, favorable to the defendant. The plaintiff may never have looked at the map, or had his attention called to it, with a view of ascertaining the size of the lots. He testified that he did not see it or have his attention called to it with that view. The instruction ignores the effect of the representation that the fence was the real boundary upon the mind of the plaintiff, to cause him not to make any further inquiry as to the size of the lots, and in overcoming such a presumption. The instructions are very fair and full, and state the law correctly, and, if anything, were too favorable to the defendant.

7. The value of that part of lots 6 and 7, as fixed by the jury, is sustained by the testimony of several witnesses, and the damages found are not excessive.

*By the Court.*—The judgment of the superior court is affirmed.

Upon a motion for a rehearing there was a brief for the appellant by *Williams & Friend.*

The motion was denied April 12, 1892.